Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| MUNICIPIO AUTÓNOMO DE SAN JUAN representado por su alcalde, Hon. Miguel Romero Lugo<br><br>Peticionario<br><br>v.<br><br>CM GROUP, LLC; HUB GROUP, LLC; B-BILLBOARDNC, LLC; OFICINA DE GERENCIA DE PERMISOS; ING. JOSÉ F. MORONTA GUZMÁN<br><br>Recurridos | KLAN202500302 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV09258 (904)<br><br>Sobre: *Injuction* (Entredicho Provisional); *Injuction (*Preliminar y Permanente) y otros |

Panel integrado por su presidenta, la jueza Álvarez Esnard, la jueza Prats Palerm y la jueza Lotti Rodriguez[1].

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 3 de septiembre de 2025.

Comparece ante nos el Municipio de San Juan ("Municipio" o "Apelante") mediante *Apelación* presentada el 9 de abril de 2025. Mediante esta, nos solicita la revocación de la *Sentencia* emitida y notificada el 12 de marzo de 2025, por el Tribunal de Primera Instancia, Sala de San Juan ("foro primario" o "foro *a quo*"). Por virtud de esta, el foro primario desestimó la *Segunda Petición Enmendada* instada por el Municipio por falta de legitimación activa.

Por los fundamentos que expondremos a continuación, **revocamos** la *Sentencia* apelada.

## I.

Conforme se desprende del expediente, el 4 de octubre de 2024, el Municipio presentó *Petición* sobre procedimiento especial

---

[1] Mediante *Orden Administrativa* OATA-2025-0078 se designó a la Hon. Glorianne Lotti Rodríguez en sustitución de la Hon. Maritere Brignoni Mártir.

para paralización de obra iniciada y demolición de obras construidas al amparo del Artículo 14.1 de la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161-2009, según enmendada, 23 LPRA sec. 9024 ("Ley Núm. 161-2009") en contra de CM Group, LLC ("CM Group") y la Oficina de Gerencia de Permisos ("OGPe").[2] Por virtud de este escrito, el Municipio alegó que el 3 de junio de 2021 se presentó una solicitud de permiso de construcción con la denominación alfanumérica 2021-379838-PCOC-015755 para la construcción e instalación de un *billboard* o valla publicitaria en el municipio de San Juan. Adujo que, tras el trámite correspondiente, CM Group comenzó la construcción e instalación del *billboard* el 1 de octubre de 2024. De igual forma, el Apelante sostuvo que, no empece a lo anterior, ese mismo día, la Oficina de Permisos del Municipio recibió una querella por la construcción de la aludida valla publicitaria.

Alegó que dicha oficina municipal, tras realizar la investigación correspondiente, señaló que la construcción e instalación del *billboard* se estaba haciendo de forma ilegal toda vez que el permiso de construcción 2021-379838-PCOC-015755 era nulo por ser contrario a la *Ley Uniforme de Rótulos y Anuncios de Puerto Rico de 1999*, Ley Núm. 355 de 22 de diciembre de 1999, según enmendada, 9 LPRA sec. 51 *et seq.* ("Ley Núm. 355-1999") y al Reglamento Conjunto para la Evaluación y Expedición de los Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios de 16 de junio de 2023, Reglamento Núm. 9223 ("Reglamento Conjunto").

Como corolario de lo anterior, el Municipio argumentó que el permiso de construcción era nulo y contrario a derecho pues permitía la construcción en un área que, no está autorizada por la Ley Núm. 355-1999, *supra*, ni por el Reglamento Conjunto. De

---

[2] Véase, Apéndice del Recurso, págs. 1-14.

igual manera, esbozó que el *billboard* se estaba construyendo en una propiedad ubicada en un Distrito Residencial 4, para la cual no tenía un Permiso Único vigente. Además, alegó que el *billboard* quedaba en la transición del carril de aceleración de entrada a la carretera PR-22, lo cual representaba un problema de seguridad vial. Cónsono con lo anterior, el Municipio puntualizó que la Autoridad de Carreteras y Transportación no endosó el proyecto en controversia, pues el mismo colindaba con la carretera PR-22, la cual está clasificada como una carretera interestatal y forma parte del *National Highway System*. Por todo lo anterior, el Apelante le solicitó al foro primario lo siguiente:

1. Señale vista para atender esta Petición, dentro de un término no mayor de diez (10) días naturales desde su presentación;

2. Dicte sentencia paralizando las obras que se llevan a cabo en la propiedad, y ordene su demolición inmediata, en un término no mayor de veinte (20) días naturales desde la celebración de la vista.

3. Dicte cualquier otro remedio que entienda procedente en derecho.[3]

Evaluado este escrito, el foro *a quo* emitió *Orden y Citación* en la cual señaló la vista de *Injunction* para el 13 de noviembre de 2024.[4] No obstante, el 9 de octubre de 2024, el Municipio presentó *Moción Informativa sobre Petición Enmendada* con el propicito de incluir al pleito a HUB Group y B-Billboard NC, LLC ("B-Billboard").[5]

Por su parte, el 13 de noviembre de 2024, la OGPe presentó *Contestación a Demanda*.[6] Mediante esta, negó ciertas alegaciones y levantó sus correspondientes defensas afirmativas. En específico, afirmó que la petición incoada por el Municipio incumplía con el Artículo. 14.1 de la Ley 161-2009, *supra*. De igual manera, el 13 de noviembre de 2024, B-Billboard presentó *Moción de Desestimación*

---

[3] *Íd.*, pág. 14.
[4] *Íd.*, págs. 47-51.
[5] *Íd.*, págs. 56-57.
[6] *Íd.*, págs. 253-259.

*por Falta de Jurisdicción y Falta de Parte Indispensable.*[7] Mediante esta, aludió que correspondía desestimar la causa de acción en su totalidad por "(1) la falta de jurisdicción del Tribunal debido a la expiración de los términos de impugnación y (2) la falta de inclusión de una parte indispensable, el profesional certificador, cuya participación es un requisito fundamental conforme a la Ley Núm. 161-2009 y la jurisprudencia aplicable".[8]

Por su lado, el 18 de noviembre de 2024, el Municipio presentó *Segunda Petición Enmendada.*[9]  Mediante la misma, el Apelante incluyó al pleito al Ingeniero Civil, José Francisco Moronta Guzmán ("Ing. Moronta Guzmán") por ser el ingeniero que certificó los planos conforme a la *Ley de Certificación de Planos o Proyecto*, Ley Núm. 135 del 15 de junio de 1967, según enmendada, 23 LPRA sec. 42a.

Posteriormente, el 26 de noviembre de 2024, B-Billboard presentó *Moción de Desestimación por Falta de Jurisdicción.*[10] En esta sostuvo que el Municipio carecía de jurisdicción y legitimación activa para instar su recurso. Por su parte, el 26 de noviembre de 2024, CM Group y HUB presentaron *Solicitud de Desestimación.*[11] Por virtud de esta, esgrimieron que el foro primario no ostentaba jurisdicción sobre las materias esbozadas por el Municipio ya que las alegaciones de dicha parte no exponían una reclamación que justificara la concesión de un remedio al amparo de la Regla 14.1 de la Ley 161-2009, *supra.*

En respuesta, 13 de diciembre de 2024, el Municipio presentó *Oposición a las Mociones de Desestimación presentadas*, respectivamente *por  B Billboard NC, LLC, CM Group, LLC y Hub*

---

[7] *Íd.*, págs. 274-279.
[8] *Íd.*, pág. 274.
[9] *Íd.*, págs. 285-415.
[10] *Íd.*, págs. 428-455.
[11] *Íd.*, págs. 678-696.

*Group, LLC.*[12] Mediante este escrito, puntualizó que dos (2) agencias gubernamentales con *expertise* concluyeron que el proyecto de los peticionados colinda con la carretera PR-22, la cual está clasificada como una carretera interestatal que forma parte del *National Highway System*. Además, agregó que los Artículos 14.1 y 9.10 de la Ley Núm. 161-2009, *supra*, faculta al Municipio de legitimación activa.

Por su lado, el 28 de enero de 2025 el Ing. Moronta Guzmán presentó *Moción de Desestimación*.[13] En esta, esencialmente esbozó que el Municipio no tenía legitimación activa ni facultad en ley para instar su recurso por lo cual le solicitó al foro primario que antes de atender los méritos de la petición, debía evaluar los argumentos plasmados por las partes codemandadas sobre la falta de legitimación activa del Peticionario. De otro lado, el 28 de enero de 2025, el Municipio presentó *Oposición a la Desestimación presentada por el Ing. José F Moronta Guzmán*.[14] Mediante esta, reiteró su postura en cuanto a que éste poseía legitimación activa para instar el pleito conforme lo establece la Ley Núm. 161-2009, *supra*, toda vez que esta legislación faculta a los municipios a acudir a los foros judiciales para peticionar la revocación de una determinación final cuya solicitud se haya hecho utilizando información falsa.

Así las cosas, el 30 de enero de 2025 se celebró una vista argumentativa. Surge de la *Minuta* de la aludida vista que comparecieron las partes y en la misma se discutió el asunto en cuanto a si el Municipio ostentaba legitimación activa para instar su causa de acción.[15] Así pues, el 12 de marzo de 2025, el foro primario emitió y notificó *Sentencia*.[16] Por virtud de esta, el foro *a*

---

[12] *Íd.*, págs. 791-806.
[13] *Íd.*, págs. 808-820.
[14] *Íd.*, págs. 845-853.
[15] *Íd.*, págs. 869-870.
[16] *Íd.*, págs. 872-887.

*quo* concluyó que el Municipio carecía de legitimación activa para incoar su causa de acción. En ese sentido, el foro primario enfatizó que había que determinar si el Municipio ostentaba legitimación activa de conformidad con el Artículo 14.1 de la Ley 169-2009, *supra.* Explicó que el Municipio alegó en su petición que los permisos de construcción en cuestión fueron obtenidos mediante información incorrecta o falsa, o mediante la omisión de información relevante. Sin embargo, el foro primario destacó que "los peticionados demostraron que la propiedad, en efecto no colinda con la PR-22, sino que colinda con la finca número de catastro 062-000-004-06".[17]  Por consiguiente, el foro *a quo* dispuso lo siguiente:

> En vista de lo anterior, aun tomando las alegaciones en la Segunda petición enmendada, de la forma más favorable para la parte peticionaria, puede colegirse que ésta no cuenta con legitimación activa estatutaria para presentar su reclamación. Reiteramos, que la doctrina de legitimación activa estatutaria bajo ordenamiento jurídico exige que la parte peticionaria cumpla con los requisitos dispuestos por el legislador o en su defecto con los requisitos de la legitimación activa ordinaria. En el caso de autos la parte peticionaria no ha logrado cumplir tan siquiera con los requisitos más laxos que exige la Ley Núm. 161-2009 para conceder la legitimación activa estatutaria.

> En virtud de lo dispuesto en las Reglas 10.2 y 42.2 de Procedimiento Civil, 32 LPRA Ap. V, y en atención a lo resuelto por el Tribunal Supremo de Puerto Rico en Pérez Vargas v. Office Depot, 203 DPR 687 (2019), acogemos la referida solicitud de desestimación y la declaramos Ha Lugar, sin necesidad de consignar y especificar todas las determinaciones de hechos y conclusiones de derecho que motivaron dicha determinación. No obstante, hacemos constar que en la medida en que surge de las propias alegaciones de las partes, así como la prueba estipulada, que la propiedad en controversia no colinda con la PR-22, la parte demandante no cumple con los requisitos previamente esbozados de la legitimación activa estatutaria dispuestos en el Art. 14.1(1) de la Ley Núm. 161-2009, supra, para revocar el permiso otrogaado [sic].[18]

Inconforme con el resultado, el 9 de abril de 2025, el Municipio compareció ante nos mediante el recurso de epígrafe y formuló el siguiente señalamiento de error:

---

[17] *Íd.*, pág. 885.
[18] *Íd.*, págs. 886-887.

> Erró el Tribunal de Instancia al desestimar la Segunda Petición Enmendada por supuesta falta de legitimación activa del Municipio.

El 23 de abril de 2025 esta Curia emitió *Resolución* en la cual se le concedió un término de treinta (30) días a la parte apelada para presentar sus respectivos alegatos en oposición. Oportunamente, el 9 de mayo de 2025, CM Group, HUB Group y el Ing. Moronta Guzmán presentaron *Alegato de las Partes Apeladas CM Group, LLC, HUB Group, LLC Y el ing. José F. Moronta Guzmán.* De la misma forma, en igual fecha, la OGPe sometió *Oposición* [sic] *a la Apelación* [sic]. Por su parte, el 29 de mayo de 2025 B-Billboard presentó *Oposición a la Apelación.* Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### A. *Legitimación Activa y Legitimación Activa Estatutaria*

Como es sabido, "[l]a doctrina de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente su jurisdicción". *Rivera et al. v. Torres et al.*, 2024 TSPR 60, 214 DPR __(2024) pág. 14. Así pues, una controversia es justiciable cuando existan partes con intereses encontrados cuyo propósito sea obtener un remedio que tenga un efecto sobre la relación jurídica. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011).

No obstante, una controversia no es justiciable de mediar alguno de los siguientes escenarios: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017).

Cónsono con lo anterior, el principio de justiciabilidad exige evaluar si la parte reclamante posee legitimación activa. *Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992). La legitimación activa significa "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Ramos, Méndez v. García García, supra,* pág. 394. En cumplimento con esta doctrina, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada; y (4) la causa de acción surge al palio de la Constitución o de una ley. *Bhatia Gautier v. Gobernador, supra*, pág. 69.

Ahora bien, el Tribunal Supremo de Puerto Rico, ha reconocido que en nuestra jurisdicción existe la legitimación activa estatutaria la cual surge "cuando una ley, ya sea de manera expresa o implícita, otorga a una persona legitimación activa para instar una acción judicial, independientemente de que esta haya sufrido un daño particular, más allá del mero hecho de la violación de la ley *Rivera et al. v. Torres et al., supra,* pág. 16 citando a J. M. Farinacci Fernós, *Cualquier persona: La facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria*, 84 Rev. Jur. UPR 359, 360 (2015).

En ese sentido, cuando la legitimación activa sea reconocida estatutariamente, "el tribunal, al momento de evaluarla, deberá interpretar la intención de la ley para determinar: si la acción fue delegada por la misma; el alcance de la autorización para impugnar la ley; y los límites al considerar si la ley condiciona o limita dicha autorización". *Íd.*, pág. 17.

### B. Ley Núm. 161-2009

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico,* Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, 23 LPRA sec. 9011 *et seq.,* ("Ley Núm. 161-2009"), establece el marco legal y administrativo sobre solicitudes, evaluaciones, concesiones y denegación de permisos que inciden en el desarrollo económico de Puerto Rico. En armonía con lo anterior, "la Ley Núm. 161-2009 permite que una parte que tenga un interés propietario o personal que pudiese verse afectado, pueda presentar una solicitud de recursos extraordinarios ante el Tribunal de Primera Instancia con el fin de solicitar la revocación de un permiso, la paralización de una obra, la demolición de obras, entre otros remedios". *Díaz Vázquez et al. v. Colón Peña et al.*, 2024 TSPR 113, 214 DPR__ (2024), págs. 8-9.

Así pues, el Artículo 14.1 de la Ley 161-2009, *supra* dispone lo siguiente:

> La Junta de Planificación, un **Municipio Autónomo** con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o cualquier persona privada, natural o jurídica, **que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar** una acción de **injunction**, mandamus, sentencia declaratoria, **o cualquier otra acción adecuada para solicitar**: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. 23 LPRA sec. 9024 (Énfasis nuestro).

Nótese que del que el precitado artículo se desprende que el mismo instituyó un procedimiento especial de *injunction* estatutario. *Díaz Vázquez et al. v. Colón Peña et al.*, supra, pág. 10. Este se "caracteriza por ser un mecanismo estatutario,

independiente, sumario y limitado, y cuyo propósito fundamental es hacer viable la efectividad de las leyes y los reglamentos de planificación (citas y comillas omitidas)". *Íd.*, pág. 11. Por ello, "este remedio estatutario está disponible para procurar la intervención judicial y de forma sumaria, independientemente de que puedan existir otros remedios o cursos de acción para reparar el agravio." *Íd.* pág. 19.

**III.**

En el presente caso, el Municipio nos solicita la revocación de la *Sentencia* emitida y notificada por el foro primario el 12 de marzo de 2025. Así pues, en su único señalamiento de error, el Apelante esgrime que el foro *a quo* erró al desestimar su causa de acción por el fundamento de falta de legitimación activa estatutaria. Ello, pues el foro primario concluyó que "en la medida en que surge de las propias alegaciones de las partes, así como la prueba estipulada, que la propiedad en controversia no colinda con la PR-22, la parte demandante [Municipio] no cumple con los requisitos previamente esbozados de la legitimación activa estatutaria dispuestos en el Art. 14.1(1) de la Ley Núm. 161-2009, supra, para revocar el permiso otrogaado [sic]".[19] Contrario a lo anterior, entendemos que la aludida determinación surge de una interpretación errada del Artículo 14.1 de la Ley Núm. 161-2009, *supra*. Veamos.

En primer lugar, es menester destacar el lenguaje esbozado en el Artículo 14.1 de la Ley Núm. 161-2009, *supra,* el cual dispone lo siguiente:

> La Junta de Planificación, **un Municipio Autónomo con Jerarquía de la I a la III,** *una Entidad Gubernamental Concernida* **que haya determinado que sus leyes y reglamentos han sido violados,** o cualquier persona privada, natural o jurídica, que **tenga un interés propietario o personal que podría verse adversamente afectado**, **podrá presentar** una acción de **injuction**, mandamus, sentencia declaratoria, o cualquier otra acción

---

[19] Véase, Apéndice del Recurso, pág. 887.

adecuada **para solicitar:** 1)la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa [...] (Énfasis nuestro)". 23 LPRA sec. 9024.

Cónsono con lo anterior, es preciso resaltar que el Tribunal Supremo de Puerto Rico ha expresado que "el Art. 14.1 contiene un mandato legislativo expreso para viabilizar que ciertas personas, entidades o instrumentalidades **tengan el acceso y la legitimación para acudir a los tribunales y vindicar un interés propietario o personal que podría verse adversamente afectado por las acciones o conducta de un tercero** en aparente incumplimiento con las disposiciones de la Ley Núm. 161-2009 y sus reglamentos" (Énfasis nuestro). *Díaz Vázquez et al. v. Colón Peña et al.*, *supra*, pág. 21.

Examinado el artículo antes esbozado, textualmente establece que un municipio tiene facultad **para presentar** una acción de *injunction* estatutario o cualquier acción adecuada **para solicitar entre otros,** la revocación de una determinación final otorgada cuya solicitud se haya hecho utilizando información incorrecta o falsa. No podemos pasar por alto que la legitimación en el Artículo 14.1, *supra*, surge cuando se haya determinado que sus leyes o reglamentos hayan sido violados o vindicar un interés propietario o personal que podría verse adversamente afectado por las acciones o conducta de un tercero.

De un análisis sosegado de la *Sentencia* apelada podemos colegir que el foro primario erró al dictaminar que el municipio no posee legitimación activa bajo el Artículo 14.1, *supra*. El foro *a quo* no distingue entre lo que constituye ostentar legitimación activa **para solicitar** la revocación de una determinación final otorgada y lo que conforma **la adjudicación en los méritos** de un *injunction* estatutario al amparo de dicho Artículo. Resulta inverosímil que si la determinación del foro primario es que el Municipio no posee

legitimación activa bajo el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, el foro *a quo* haya expuesto en la sentencia una determinación **en los méritos** sobre que "**la propiedad en controversia no colinda con la PR-22**".[20] Es decir, si el Apelante no tenía legitimación activa estatutaria, correspondía que el foro primario desestimara el recurso sin ningún tipo de expresión ulterior sobre los méritos del caso.

Es nuestro contender que el texto del Artículo 14.1, *supra*, es claro y no se presta a interpretaciones. No debe confundirse la facultad o legitimación activa concedida al Municipio al amparo del aludido Artículo para solicitar un *injunction* estatutario, con la adjudicación en los méritos, la cual conlleva el probar si se cumplió o no con los requisitos dispuestos en el referido Artículo. Nuestro Tribunal Supremo ha aclarado que, al momento de evaluar la existencia y el alcance de la legitimación activa estatutaria los tribunales debemos examinar "la intención de la ley para determinar: si la acción fue delegada por la misma; el alcance de la autorización para impugnar la ley; y los límites al considerar si la ley condiciona o limita dicha autorización." *Rivera et al. v. Torres et al., supra*, pág. 17.

En ese sentido, de una lectura sosegada del Artículo 14.1 el único elemento que el foro primario debía examinar para determinar la legitimación activa estatutaria era corroborar si sus leyes y reglamentos han sido violados o si la parte peticionaria tiene un "interés propietario o personal que podría verse adversamente afectado" tal y como la propia ley dispone.[21] Es

---

[20] *Íd.*

[21] Véase la opinión disidente del Juez Estrella Martínez en *B.Billboard BG v. Out of Home Media*, 213 DPR 1076, 1089-1090 (2024) en la que expresó lo siguiente:

> Soy del criterio que las alegaciones de la Peticionaria estaban expresadas de manera clara y eran suficientes para que ambos foros recurridos le reconocieran legitimación activa para solicitar un interdicto estatutario en virtud del propio texto y propósito del Art. 14.1 de la Ley Núm. 161-2009. A saber, que la Peticionaria del recurso extraordinario posea un "interés propietario o

menester recordar que cuando "el legislador se ha manifestado con un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa". *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 215 DPR___ (2025), 2025 TSPR 56, pág. 16 (2025). Por tanto, somos del criterio que la *Segunda Petición Enmendada* instada por el Municipio satisface dicha exigencia plasmada por la Asamblea Legislativa y, por ende, el Apelante poseía legitimación activa para instar su causa de acción.

Cónsono con lo anterior y lo dispuesto en el Artículo 14.1, esta Curia entiende que la *Segunda Petición Enmendada* presentada por la parte Apelante contiene alegaciones suficientes que de probarse en una vista evidenciaria pudieran conceder el remedio solicitado al amparo del aludido Artículo.

Ahora bien, del expediente del caso se desprende que, en la presente controversia, se llevaron a cabo dos (2) vistas. La primera se celebró el 13 de noviembre de 2024, y conforme surge de la *Minuta*, en aquella ocasión las partes discutieron las mociones de desestimación presentadas en las cuales se arguyó falta de parte indispensable.[22] En la segunda vista argumentativa, llevada a cabo el 30 de enero de 2025, surge de la Minuta que "el Tribunal luego de hacer un recuento procesal solicita a las partes demandas argumentar sus mociones de desestimación y a la parte demandante argumentar su oposición".[23] Así pues, de la aludida *Minuta*, se desprende que los abogados únicamente presentaron argumentos referentes al asunto de la legitimación activa y no sobre los méritos del caso.

Por tanto, ordenamos la cerebración de una vista para determinar los méritos de la procedencia del *injuction* estatutario

---

personal que podría verse adversamente afectado". **No se necesitaba satisfacer nada más.** (Énfasis en el original)

[22] *Íd.*, págs. 281-284.

[23] *Íd.*, pág. 870.

incoado. Por consiguiente, a la luz de los criterios anteriormente esbozados, resolvemos que el error esgrimido por el Apelante se cometió por lo cual corresponde revocar la *Sentencia* apelada.

**IV.**

Por los fundamentos antes expuestos, **revocamos** la *Sentencia* apelada. En consecuencia, devolvemos el caso al Tribunal de Primera Instancia para que celebre una vista para atender el recurso del Municipio en sus méritos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Lotti Rodríguez disiente sin voto escrito.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones